IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLY C. PAYNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CIV-10-82-FHS-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Kelly C. Payne requests judicial review of a denial of childhood benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born December 28, 1984, and was twenty-three years old at the time of the applicable administrative hearing.  (Tr. 351, 459).  She has a high school education and no past relevant work.  She alleges that she has been disabled since before October 28, 2002, due fibromyalgia, chronic pain, depression, and anxiety (Tr. 351).

### Procedural History

On October 28, 2002, the claimant protectively filed an application for childhood disability benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (Tr. 351). Her application was denied.  ALJ Michael Kilpatrick held an administrative hearing and determined the claimant was not disabled in a written opinion dated May 11, 2004 (Tr. 351).  The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-05-368-JHP-SPS and remanded the case for further proceedings (Tr. 345-358).  A second administrative hearing resulted in another denial of benefits on September 2, 2008. (Tr. 328-342).  The Appeals Council again denied review, so the ALJ's September 2, 2008 opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant's severe impairments of fibromyalgia and obesity did not preclude her from performing the full range of light work as defined in 20 C.F.R. § 404.1567(b) (Tr. 332).

-- 3 --

The ALJ concluded that, although the claimant had no past relevant work, she was nevertheless not disabled prior to attaining age twenty two, according to "the grids," *i. e.*, Medical-Vocational Rule § 202.20 (Tr. 341).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the medical evidence, (ii) by failing to correctly apply the grids, and (iii) by failing to properly evaluate her credibility. As part of her third contention, the claimant argues that the ALJ improperly discounted her fibromyalgia complaints, and improperly assessed her credibility based on her past school activity. The undersigned Magistrate finds the claimant's third contention persuasive for the following reasons.

The claimant testified at the 2004 administrative hearing that her fibromyalgia caused her severe pain, particularly in her neck and lower back; that the pain varies in intensity, but occurs daily and has gotten worse since 2002; and that she has pain in her legs, ribs, knees, and hips, as well as muscle spasms and swollen joints. She also testified that she has severe insomnia, sleeps approximately four hours in a twenty-four hour period, and has gained weight due to her inactivity. (Tr. 291-300). She stated that she only leaves the house every week or two, and only for brief periods of time; that she can sit for thirty minutes at a time, stand for five to ten minutes, walk "[m]aybe a block," and barely lift ten pounds. (Tr. 300-301). The claimant said that she can drive, but prefers not to because it increases her anxiety. (Tr. 302). Her daily activities vary due to her insomnia, but she generally spends the majority of the day lying down and watching

television.  She occasionally helps to unload the dishwasher at home, but she has to lie down after doing so.  (Tr. 302-03).

In the 2002-2003 school year, the claimant had over thirty absences, including fifteen absences even after she was allowed to drop down to two classes for the Spring 2003 semester as part of an individual education program.  (Tr. 184-91).  The claimant's mother submitted a third party function report stating that the claimant used to participate in sports and social functions and made straight A's while rarely missing class, but that she now rarely socializes and spends a large amount of time in bed.  (Tr. 102-09).  Two of the claimant's friends also wrote letters on her behalf.  Tasha Chase stated that she had known the claimant for over ten years; that they used to go shopping, to the movies, and to concerts, but that the claimant can no longer tolerate the pain from these activities; and that the claimant now spends most of her time in her own bedroom.  Lori Morris said that she used to go to concerts and clubs with the claimant and that the claimant was not shy about meeting other people and getting autographs, but that the claimant no longer participated in these activities due to pain and anxiety attacks brought on by the crowds.  Morris also stated that the claimant used to be a "straight A" student, but that the claimant had changed her focus to merely passing her classes.  (Tr. 113-114).

The ALJ summarized the claimant's testimony and found it was not completely credible.  He failed to assign any significance to her subjective complaints of pain and weakness due to her fibromyalgia, and relied upon a December 16, 2002 school report stating that she was fully included in regular classes which allowed her to take breaks, that she was an office aide, that she got along with her classmates and exhibited age-

appropriate behaviors, and that she was permitted to move around and stretch during classes.  He noted that the claimant attended school dances and was able to drive to and from friends' houses, which undermined her credibility, but did not mention information from the same page stating that the claimant had to leave the dances early due to pain, and she was no longer able to participate in school sports.  (Tr. 81, 339).  The ALJ noted that the claimant had "no outward signs of physical limitation" and further opined that because the claimant did not exhibit the specific observable signs of weight due to loss of appetite from incessant pain, muscular atrophy, muscular spasms [despite her testimony that she frequently suffered from muscle spasms], use of assistive devices, prolonged bed rest, or adverse neurologic signs, her symptoms were "relatively moderate."  (Tr. 340). The ALJ also believed that, because the claimant indicated that she might take a year off school before beginning college, she was "simply not motivated to work." (Tr. 340).

  Deference is generally given to an ALJ's credibility determination, unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias*, 933 F.2d at 801.  In assessing a claimant's complaints of pain, an ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings.  *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).  But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted].  A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL

374186, at *4 (July 2, 1996).  The ALJ's credibility determination fell below these standards.

First, the ALJ mentioned but did not discuss the credibility factors set forth in Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529, 416.929.[2]  He was not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but "simply 'recit[ing] the factors'" is insufficient, *Hardman*, 362 F.3d at 678, *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4.

Second, the ALJ apparently rejected the claimant's complaints of pain based on a lack of objective support in the record.  But symptoms of fibromyalgia are "entirely subjective."  *See*, *e. g.*, *Moore v. Barnhart*, 114 Fed. Appx. 983, 991-92 (10th Cir. 2004), ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia."), *citing Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (finding the ALJ erred in "effectively requir[ing] 'objective' evidence for a disease that eludes such measurement."); *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) (noting fibromyalgia is "poorly-understood within much of the medical community [and] . . . is diagnosed entirely on the basis of patients' reports of pain and other symptoms."). *See also Gilbert v. Astrue*, 231 Fed. Appx. 778, 784 (10th Cir. 2007) ("[T]he lack of

---

[2] The factors to consider in assessing a claimant's credibility are:  (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations.  Soc. Sec. Rul. 96-7p at 3, 1996 WL 374186 (1996).

-- 7 --

objective test findings noted by the ALJ is not determinative of the severity of [the claimant's] fibromyalgia.") [citation omitted].  Thus, a lack of significant restrictions in the claimant's gate and range of motion, for example, does not necessarily mean that her fibromyalgia and the pain it causes her are not disabling.  Additionally, the ALJ substituted his own medical opinion when he listed a number of symptoms he expected the claimant to exhibit in order to be found disabled.  *See Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) ("The ALJ may not substitute his own opinion for that of claimant's doctor."), *citing Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 743 (10th Cir. 1993) and *Kemp v. Bowen*, 816 F. 2d 1469, 1475 (10th Cir. 1987).

Third, the ALJ's finding that the claimant's statements as to her impairments were not credible in light of her own description of her activities and lifestyle appear to be simply boilerplate language because the ALJ did not link his conclusion to any evidence.  In fact, the claimant's testimony was that she leaves her house rarely and that her lifestyle has been seriously curtailed by her pain.  *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence[.]").

Last, the ALJ entirely failed to account for two letters from friends that the claimant submitted.  Social Security Ruling 06-3p (SSR 06-3p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in their professional capacity.  *See* Soc. Sec. Rul. 06-3p, 2006 WL 2329939.  Soc. Sec. Rul. 06-3p states, in part, that other source opinion

evidence, such as those from spouses, parents, *friends*, and neighbors, should be evaluated by considering the following factors: i) nature and extent of the relationship; ii) whether the evidence is consistent with other evidence; and iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. Here, the ALJ made no mention of these letters at all, and his written decision is therefore not clear that he considered this evidence in making his decision. "[T]he ALJ is not required to make specific written findings of credibility *only if* 'the written decision reflects that the ALJ considered the testimony,'" *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) [citation omitted] [emphasis added], and his failure to do so here is reversible error. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion . . . is itself supported by substantial evidence."); *see also Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) (per curiam) ("[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.").

  Because the ALJ failed to analyze the claimant's credibility in accordance with *Kepler* and *Hardman*, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly analyze the claimant's credibility, and if such analysis requires any adjustment to the claimant's RFC on remand, the ALJ should re-determine what work she can perform, if any, and whether she is disabled.

## Conclusion

In summary, the undersigned Magistrate Judge PROPOSES a finding by the Court that correct legal standards were not applied and that the decision of the Commissioner is therefore not supported by substantial evidence. The undersigned Magistrate Judge also RECOMMENDS that the Commissioner of the Social Security Administration's decision be REVERSED and the case REMANDED to the ALJ for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 13th day of September, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma